# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LEE HOLDEN PARKER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CIVIL NO. 08-cv-152-MJR |
| | ) |
| **ROGER E. WALKER, JR.,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, a wheelchair bound inmate at the Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, § 1985(3), and § 1986; for violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*.; and for violations of various state laws. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on

its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

**THE COMPLAINT**

Plaintiff alleges that on January 13, 2006, he was transferred from Menard Correctional Center (MCC) to Pinckneyville Correctional Center (PCC). Upon arrival at PCC, Plaintiff states that he asked Defendant Sellers for placement in the protective custody unit rather than placement in general population because of "enemy issues." In the complaint, Plaintiff explains that past actions he has taken while confined has caused certain inmates to desire to harm him. Specifically, Plaintiff asserts that these past actions include: (1) saving a guard's life during a 1965 riot at MCC; and (2) his role as a witness providing information about an attempted murder, planned by inmates at PCC, of a Chicago homicide detective. Based on these past actions (and several others), Plaintiff contends that his enemies include inmates Paul DeLapaz, Daniel Wilkerson, Richard Nitz, and Paul Zozak. Plaintiff asserts, however, that his enemies go beyond these specific inmates to include all of the members of the gangs to which these inmates allegedly belong - including all members of "The Latin Kings" and the "Disciples."[1] Therefore, Plaintiff essentially contends that he cannot safely be housed in general population at PCC and that he needs to be housed in a protective custody unit.

Defendant Sellers allegedly informed Plaintiff that PCC did not have a protective custody unit. Plaintiff alleges that Sellers also informed him that "the only safe alternative was to check into segregation voluntarily." In light of these statements and believing that his life was in danger if he accepted placement in the general population, Plaintiff asserts that he refused assignment to

---

[1] The complaint alleges that even after DeLapaz was transferred from PCC, Plaintiff refused to housed in general population because he was afraid that DeLapaz's gang associates would harm him.

general population at PCC. Instead, Plaintiff states that he chose the relative safety of confinement on disciplinary segregation. Accordingly, Plaintiff was issued a disciplinary ticket for disobeying an order (i.e., a cell assignment in general population). An Adjustment Committee comprised of Defendants Grace and McBride found Plaintiff guilty of the infraction and placed him in segregation for one month and demoted him to "C grade" for one month. The disciplinary action was reviewed and approved by Defendant Flagg.

Plaintiff filed a grievance concerning this disciplinary action, but the grievance was denied by Defendant Cleland. In his response to the grievance, Defendant Cleland wrote: "Lt. Bradley, Internal Affairs, verified that inmate Parker's enemy claims could not be substantiated." *See* Plaintiff's Exh. A, page 8.

Plaintiff filed an appeal from the denial of his grievance with the Administrative Review Board (ARB). On appeal, Defendant Benton, writing for the ARB, stated that it was "reasonably satisfied that [Plaintiff] committed the offense and recommends the grievance be denied." *See* Plaintiff's Exh. A, page 9 However, Defendant Benton also acknowledged that Plaintiff had "declared Offender DeLapaz as an enemy" and, therefore, the ARB directed that "Warden Bartley . . . ensure Offender Parker is kept separate from Offender DeLaPaz." *Id*. Defendant Walker concurred with the recommendations of the ARB. *Id*.

At the same time that Plaintiff was pursuing review of his disciplinary action, it appears that Plaintiff was also pursuing grievances concerning the lack of a protective custody unit at PCC. Plaintiff also wrote letters and filed grievances challenging the "credibility" of Defendant Bradley's finding that Plaintiff's enemies claims could not be verified. It appears that Plaintiff did not get replies to these inquiries and grievances. The lack of a response triggered further inquiries and

grievances from Plaintiff concerning the lack of response. Plaintiff claims that the failure to respond to his grievances and correspondence was "a conspiratorial causal and proximate retaliation incidental to [his] using grievance and lawsuit filing . . . to thwart [his] jailhouse lawyer activity."

From these alleged facts, Plaintiff constructs Count 1 of his complaint which he titles "2-7-06 grievance denial." Counts 2 through 7 of the complaint bear similar titles. These counts also recite a fact pattern similar to that recounted above. Specifically, Plaintiff is ordered to general population; Plaintiff refuses to go to general population; Plaintiff is issued a disciplinary ticket for disobeying an order; Plaintiff is found guilty of the disciplinary ticket; Plaintiff is confined in disciplinary segregation;[2] and Plaintiff pursues grievances and appeals concerning these disciplinary actions and the lack of a protective custody unit at PCC; these grievances are denied and/or he does not receive a response. By consistently refusing direct orders to be housed in general population, Plaintiff has managed to stay on disciplinary segregation since being transferred to PCC.

In Count 8, Plaintiff notes the comment often repeated to him by various prison staff that PCC does not have a protective custody unit. Plaintiff contends the complete lack of a protective custody unit at PCC "is . . . per se . . . deliberate indifference, reckless disregard failure to protect" PCC inmates generally and Plaintiff in particular. Plaintiff claims that by not having a protective custody unit - and leaving him only two choices (general population or disciplinary segregation - "everyone of the . . . named defendants . . . no matter their staff position . . . failed to afford [Plaintiff] the protection" he needed.

In Count 9, Plaintiff asserts a claim that the Defendants have violated his rights under the

---

[2] In Counts 5 and 7, Plaintiff alleges that he lost good time credits as part of the discipline imposed on him in addition to be placed in disciplinary segregation.

4

Americans with Disabilities Act (ADA). Plaintiff contends that he is a "wheelchair invalid" and that the ADA "permits disabled state prisoners to sue prison officials for damages resulting from violations of prisoners' Constitutional rights, at least as to actual violations prohibited under the eighth amendment cruel and unusual punishment clause through the fourteenth amendment substantive, procedural due process clause, and equal protection."

Finally, although not denominated as separate claims, Plaintiff appears to seek relief pursuant to 42 U.S.C. §§ 1985(3) and 1986.

**DISCUSSION**

**A. Claim 8 - Denial of protective custody.**

Plaintiff's claim that he is being denied placement in a protective custody unit lies at the heart of all of his claims. Therefore, the Court begins with a review of Count 8 of the complaint. As noted above, Count 8 claims that the lack of a protective custody unit at PCC is *per se* deliberate indifference to Plaintiff's risk of being attacked by other inmates at PCC. Notably, Plaintiff seeks damages for past harm only, he has ***not*** requested prospective relief. Specifically, Plaintiff seeks compensatory and punitive damages based on the number of days he has spent in disciplinary confinement - the asserted "harm" being that Plaintiff's actual confinement on disciplinary segregation is much more restrictive than protective custody would have been. While confined in disciplinary segregation, for example, Plaintiff asserts that he was denied daily exercise, weekly barber visits, library visits, and a monthly stipend.

To establish an Eighth Amendment failure to protect claim, however, Plaintiff must demonstrate (1) that he suffered an objectively sufficiently serious injury and (2) that he was incarcerated under conditions imposing a sufficient risk of serious harm. *Borello v. Allison*, 446

F.3d 742, 747-48 (7th Cir. 2006). In this case, Plaintiff has not alleged that he has actually been attacked by another inmate. Indeed, Plaintiff takes great pains to point out that he affirmatively chose the safety of disciplinary segregation rather than even risk the possibility of an attack in general population. While Plaintiff need not suffer an actual attack to secure *prospective* relief on a claim that prison officials have failed to adequately protect him from other inmates, *Farmer v. Brennan*, 511 U.S. 825, 845 (1994); *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923), a backwards looking claim seeking *damages* against prison officials for failing to adequately protect Plaintiff from other inmates must be premised on an actual attack. *See Babcock v. White*, 102 F.3d 267, 270-72 (7th Cir. 1996) (federal inmate who was not actually assaulted by another inmate who was known to pose a risk of attack, could not recover damages from prison officials for failing to protect him).

Additionally, the only "injuries" Plaintiff appears to have suffered were the additional restrictions imposed on him in disciplinary segregation. Those restrictions - the loss of daily exercise, weekly barber visits, library visits, and the loss of a monthly stipend - did not deprive Plaintiff of basic human needs or deprive him of the minimal civilized measure of life's necessities. Therefore, the conditions - as alleged in the complaint - did not violate Plaintiff's Eighth Amendment rights. *Rhodes v. Chapman,* 452 U.S. 337, 346-47 (1981) (for prisoner to state an Eighth Amendment claim based on conditions of confinement, the conditions must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities) ; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir 1987).

Furthermore, the injuries suffered by Plaintiff (i.e., the restrictions of disciplinary

confinement) were caused not by the alleged failure of the Defendants to protect Plaintiff from a substantial risk of attack, but from Plaintiff's own admitted decision to subject himself to those restrictions rather than risk the *possibility* of attack in general population. While Plaintiff describes his situation as a "Hobson's choice" between (1) near certain attack if housed in general population and (2) the safe, but austere, conditions of disciplinary confinement, this is a false statement of Plaintiff's choices. As noted above, Plaintiff could have sought *prospective* relief from a court of competent jurisdiction - without having to show that he had been actually attacked - if he truly believed that the Defendants were being deliberately indifferent to a significant risk of attack. *Farmer v. Brennan*, 511 U.S. at 845. When all of the options available to Plaintiff are considered, it is hard to come to any other conclusion than that the deprivations Plaintiff suffered in disciplinary segregation were self-inflicted. For these reasons, Count 8 of the complaint should be dismissed pursuant to 28 U.S.C. § 1915A.

**B. Counts 1 through 7 - Denial of grievances.**

Counts 1 through 7 of the complaint concern the Defendants' failure to respond to or the Defendants' denial of the grievances Plaintiff filed with respect to (1) the disciplinary tickets and (2) the failure to place him in a protective custody unit. In general,"a state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to grant a grievance, to ignore it, or to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). Without more, Plaintiff's allegations that the Defendants denied or failed to respond to his grievances does not state a constitutional claim.

To bolster his claim concerning the grievances, Plaintiff casts the Defendants' actions as retaliation for Plaintiff's activities as a jailhouse lawyer. It is well settled that prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).

It is also true that the retaliatory act itself does not have to independently violate the Constitution. *Babcock*, 102 F.3d at 275. For example, prisoners have no protected interest in being housed in a particular prison or particular part of a prison, and, therefore, when a prisoner is transferred to a more restrictive environment it does not rise to the level of a constitutional violation. *See DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992); *Meachum v. Fano*, 427 U.S. 215, 224 (1976). If, however, the motivating factor in transferring a prisoner to a more restrictive prison is retaliation for a prisoner exercising his First Amendment rights, then the prisoner has a claim under § 1983. *See Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996).

The Court, however, does not understand the Constitution as providing a remedy for every slight or petty annoyance that befalls an inmate even if done with retaliatory intent. While the retaliatory act does not have to rise to the level of an independent constitutional violation in order to be actionable under § 1983, it still must rise above the inconsequential or trivial. *Cf. Burlington Northern & Sante Fe Railway Co. v. White*, 58 U.S. 53, 67 (2006) (in context of a Title VII retaliation claim, only those actions a reasonable employee would have found materially adverse are actionable; petty slights and minor annoyances that often take place at work do not constitute actionable retaliation). Incarceration means that a prisoner's life is controlled by prison officials

8

down to the smallest detail. Minor changes in a prisoner's life lacking a material adverse affect are just part of the unpleasantness of prison life and ought not support a retaliation claim. *Id.*

In the case at hand, the retaliatory acts allegedly taken by the Defendants are that they did not respond to Plaintiff's grievances or they denied his grievances. These alleged retaliatory acts did not have a material adverse effect on Plaintiff. First, it did not make Plaintiff's confinement any worse. Instead, the lack of response to Plaintiff's grievances (or the denials of the grievances) merely continued the status quo - Plaintiff remained in disciplinary segregation (for violations he admits he committed). Second, these alleged acts seem to have had little, if any, additional adverse effect on the filing of grievances by Plaintiff. In this case alone, Plaintiff alleges that he continued to file grievances and to submit correspondence to various prison officials despite not getting a favorable response or, in some cases, no response to his complaint.

In theory, a consistent pattern where grievances are denied or go unanswered might possibly discourage a person from filing grievances and, ultimately, cause a person to curtail the exercise of his or her rights. In the prison context, however, this potential chill is offset by the statutory requirement that prisoners pursue their administrative prison remedies before seeking relief in the federal courts. *See* 42 U.S.C. § 1997e(a). Even when a prisoner seeks relief that is unavailable in a grievance proceeding (e.g., monetary damages), exhaustion is still a statutory prerequisite to suit. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Thus, the inability to obtain relief through the grievance process may be an annoyance for a prisoner, but it can hardly be described as having a material adverse affect. In short, prisoners have sufficient incentive to continue filing grievances even if - in retaliation - the grievances are denied or ignored by prison officials.

Even assuming that the Defendants' alleged acts materially affected Plaintiff, his retaliation

9

claims should still be dismissed. First, in order to give the Defendant's adequate notice, Plaintiff must name the suit or suits he filed that are the cause of the retaliation. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Plaintiff's complaint, however, only makes vague references to lawsuits and grievances and his activities as a jailhouse lawyer. Second, the Seventh Circuit recently clarified that in order to qualify as protected speech, an inmate's complaints or grievances must be "related to matters of public concern" rather than merely a "personal gripe" about a particular incident. *Pearson v. Welborn*, 471 F.3d 732, 740-41 (7th Cir. 2006). *See also McElroy v. Lopac*, 403 F.3d 855 (7th Cir. 2005); *Brookins v. Kolb*, 990 F.2d 308 (7th Cir. 1993). There is no indication that Plaintiff's lawsuits and grievances have been about anything more than his personal gripes. Therefore, Plaintiff's retaliation claims should be dismissed.

In Counts 5 and 7, Plaintiff seeks the restoration of 90 days good time credit he lost as a result of two disciplinary actions. Plaintiff's claim for restoration of his good time credits, however, must be dismissed. The proper method for challenging the revocation of good time credit is habeas corpus, but only after Plaintiff has exhausted his remedies through the Illinois state courts. *See, e.g., Heck* v. Humphrey, 512 U.S. 477, 480-81 (1994). The Illinois courts have recognized mandamus as an appropriate remedy to compel prison officials to award sentence credit to a prisoner. *See Turner-El v. West,* 811 N.E.2d 728, 733 (Ill. App. 2004) (citing *Taylor v. Franzen*, 417 N.E.2d 242, 247, *aff'd on reh'g*, 420 N.E.2d 1203 (Ill.App. 1981)). The State of Illinois must first be afforded an opportunity, in a mandamus action pursuant to 735 ILCS 5/14-101 *et seq*. to consider the merits of Plaintiff's claim. Accordingly, this claim is dismissed without prejudice to Plaintiff bringing his claims in a properly filed habeas corpus action, ***but only after he has exhausted his state court remedies***.

**C. ADA claim**.

Plaintiff's ADA claim should be dismissed. The ADA does not - as Plaintiff contends - provide a second avenue for a disabled prisoner to assert an Eighth Amendment or other constitutional claim. Instead, Titles I, II, and III of the ADA prohibit discrimination on the basis of a disability by private or public entities. 42 U.S.C. § 12101 *et seq*. Nothing in the complaint indicates that Plaintiff is being denied protective custody status - or otherwise discriminated against - because he is disabled. In fact, Plaintiff's complaint is that there is no protective custody at PCC for either non-disabled inmates or for inmates with disabilities. Therefore, Plaintiff's ADA claim should be dismissed.

**D. Claims under §§ 1985(3) and 1986.**

For his § 1985(3) claim, Plaintiff is required to allege that the Defendants' actions were motivated by racial, or otherwise class-based, discrimination. *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002). The complaint not only fails to allege such racial or class-based animus, but actually contradicts such a claim. First, the complaint alleges that there is no protective custody unit at PCC for Plaintiff or any other inmate regardless of race. Second, Plaintiff claims that *he* has been retaliated against (i.e., the lack of response to his grievances) because of *his* activities as a jailhouse lawyer. Such allegations do not support a claim of racial or class-based discrimination.

Because Plaintiff has not stated a § 1985(3) claim, his § 1986 claim fails as well. *Keri v. Bd. of Trs. of Purdue Univ.,* 458 F.3d 620, 643 (7th Cir. 2006) (reasoning that a § 1986 claim requires a § 1985 violation); *Hicks v. Resolution Trust Corp.,* 970 F.2d 378, 382 (7th Cir. 1992).

**DISPOSITION**

In summary, Plaintiff's complaint does not survive review under § 1915A. Accordingly, Counts 5 and 7 of the action - seeking restoration of good time credits - are **DISMISSED** without prejudice. All remaining claims in this action are **DISMISSED** with prejudice. Plaintiff is advised that the dismissal of this action will count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). Plaintiff's motion for appointment of counsel (Doc. 3) is **DENIED** as moot. All other pending motions in this case are **DENIED** as moot.

**IT IS SO ORDERED.**

**DATED this 6th day of November, 2008.**

                                            **s/ Michael J. Reagan**
                                            **MICHAEL J. REAGAN**
                                            **United States District Judge**